## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Timothy Greco, MD, et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | No. 20-2235 |
| v. | : | |
| | : | |
| People's Republic of China and | : | |
| the Communist Party of China, | : | |
| Defendants. | : | |

## EXPLANATION AND ORDER

Five years ago, Plaintiffs[1] sued the People's Republic of China
(PRC) and the Communist Party of China (CPC) for misrepresentation
and negligence (or reckless indifference) stemming from the alleged
"delay and failure by senior officials of [the PRC and CPC] . . . to inform
and warn the public and the world of the nature of the coronavirus
outbreak in China and the known human to human transmission of the
coronavirus and COVID-19." *See* Am. Compl. ¶ 37, ECF No. 15.  More
specifically, Plaintiffs allege that CPC and PRC officials knew that
COVID-19 could "develop into a major public health event and global

---

[1] Plaintiffs are a group of 26 individuals and small business owners. *See* Am. Compl. ¶¶ 9-34.
Plaintiffs began by suing the PRC and "the Chinese Communist Party," *see* Compl. ¶¶ 35-36, ECF
No. 1, but later amended the caption and complaint to reflect the latter Defendant's "proper name"
("the Communist Party of China" or CPC).  Mot. to Amend ¶ 3, ECF No. 13.

pandemic," but waited to disclose and "publicly downplayed the risk . . .
for political reasons[.]"  *Id.* ¶¶ 44-46.  This calculated inaction and
misrepresentation "directly resulted in and caused the . . . widespread
transmission" of COVID-19 "from China to the rest of the world," leading
to personal injuries, disease, death, and economic losses for Plaintiffs.  *Id.*
¶ 61.

Since suing in 2020, Plaintiffs have tried but failed to effect service
on either the PRC or the CPC, each of which qualifies as a "foreign state"
under the Foreign Sovereign Immunities Act (FSIA).  *See* 28 U.S.C. §§
1603(a); Mot. for Ext. of Time to Serve Foreign State Defendants, ECF
No. 5 (conceding both the PRC and CPC are "foreign states"); *Missouri
ex rel. Bailey v. People's Republic of China*, 90 F.4th 930, 934-35 (8th
Cir. 2024) (holding that the PRC and CPC are "foreign state[s]" under the
FSIA).

The Court is sympathetic to Plaintiffs' plight:  as Plaintiffs have
aptly put it, "service of process upon [a] foreign state . . . is a technical,
time-consuming[,] and complicated matter."  Resp. to Order to Show
Cause ¶ 19, ECF No. 9.  The Court still finds that nothing in Plaintiffs'

most recent Status Report justifies a continuance of the stay, and separately, must consider whether the case must be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

28 U.S.C. § 1330 gives district courts original jurisdiction over any nonjury civil action against a foreign state, unless that state is "entitled to immunity either under [the FSIA] or under any applicable international agreement." Under the FSIA, foreign states are presumptively immune— and there is no jurisdiction over claims against them—unless one of the FSIA's express exceptions to immunity applies. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015). Even when a foreign state fails to enter an appearance to assert an immunity defense, a district court "still must determine that immunity is unavailable under the [FSIA]." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 494 n.20 (1983). Plaintiffs bear the burden of proving that one of the FSIA's express exceptions to immunity applies. *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1285 (3d Cir. 1993).

Plaintiffs contend that the PRC and CPC are not immune from suit under the FSIA's non-commercial tort exception. Am. Compl. ¶ 3

(asserting jurisdiction is proper under "applicable federal statutes, including but not limited to . . . 28 U.S.C. § 1605(a)(5).").  That exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . .  in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment[.]

28 U.S.C. § 1605(a)(5).

The non-commercial tort exception is subject to two exceptions: the "discretionary function" and "misrepresentation" exceptions.  *Id.* § 1605(a)(5)(A)-(B).  Under those two exceptions, a foreign state will still be immune from any claim (A) "based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused," or (B) "arising out of . . . misrepresentation, deceit, or interference with contract rights[.]" *Id*.

The Court of Appeals for the Third Circuit has yet to precedentially address the FSIA's non-commercial tort exception (or the two exceptions to the exception).  *See Fed. Ins. Co.*, 12 F.3d at 1277 n.2 (declining to

address whether district court could exercise jurisdiction under non-commercial tort exception); *Ezeiruaku v. Bull*, 617 F. App'x 179, 182 (3d Cir. 2015) (noting, "[f]or the sake of completeness," that non-commercial tort exception did not apply because foreign state's alleged misconduct "clearly occurred within the territorial jurisdiction of the United Kingdom."). The Court is not, however, entirely without guidance—at least as to the non-commercial tort exception and the discretionary function exception to that exception.

First, in *Argentine Republic v. Amerada Hess Shipping*, the Supreme Court held that the FSIA's non-commercial tort exception does not apply when a foreign state commits a tort abroad, even if that tort has "effects" stateside. 488 U.S. 428, 441 (1989). Since then, other circuit courts have held "'the entire tort'—including not only the injury but the act precipitating that injury—must occur in the United States" for the non-commercial tort exception to apply. *Jerez v. Republic of Cuba*, 775 F.3d 419, 424 (D.C. Cir. 2014); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 109, 115 (2d Cir. 2013) ("For this exception to apply, however, the 'entire tort' must be committed in the United States.");

*O'Bryan v. Holy See*, 556 F.3d 361, 382 (6th Cir. 2009) ("We join the Second and D.C. Circuits in concluding that in order to apply the tortious act exception, the 'entire tort' must occur in the United States. This position finds support in the Supreme Court's decision in *Amerada Hess Shipping* . . .")

Second, the FSIA's "discretionary function" exception is modeled after a similar exception to jurisdiction set forth in the Federal Tort Claims Act (FTCA)—an exception for which the Supreme Court developed a two-part test in *Berkovitz v. United States*, 486 U.S. 531 (1988). *Compare* 28 U.S.C. § 1605(a)(5)(A) (FSIA) *with* 28 U.S.C. § 2680(a) (FTCA); *see also* H.R. Rep. No. 94-1487, at 21 (1976) ("The exceptions provided in subparagraphs (A) and (B) of section 1605(a)(5) correspond to many of the claims with respect to which the U.S. Government retains immunity under the Federal Tort Claims Act, 28 U.S.C. 2680(a) and (h)."). Per *Berkovitz*, the FTCA's discretionary function exception bars suit if the challenged conduct (1) "involves an element of judgment or choice," meaning a "statute, regulation, or policy" does not "specifically prescribe[] a course of action"; and (2) is "grounded in social, economic,

and political policy[.]" *Berkovitz*, 486 U.S. at 536-37 (Government's regulation of polio vaccines not a discretionary function); *see also Fisher Bros. Sales v. United States*, 46 F.3d 279, 285 (3d Cir. 1995) (FDA Commissioner's decisions to prohibit and destroy poisonous Chilean fruit were discretionary functions). As other courts have done, this Court will apply the *Berkovitz* test to determine whether Defendants' conduct qualifies as discretionary under the FSIA. *See Fagot Rodriguez v. Republic of Costa Rica*, 297 F.3d 1, 8 (1st Cir. 2002); *O'Bryan*, 556 F.3d at 383.

With these precepts in mind and after careful consideration of the Amended Complaint, the Court concludes that (1) the non-commercial tort exception to FSIA immunity does not apply; and (2) even if it did, Defendants would still be immune under the discretionary function exception to that exception.

According to the Amended Complaint, all of the PRC and CPC's tortious acts and omissions took place solely in China. *See, e.g.,* Am. Compl. ¶¶ 40 (alleging that the PRC and CPC "prevented Chinese citizens from leaving or entering the city of Wuhan . . . [but] allowed foreign

citizens to come in and out"), 43 (officials "distributed information and instructions for provincial officials . . . that were not to be disclosed publicly."). Even though these acts and omissions may have had effects in the United States, *see id.* ¶¶ 50-54, it cannot be said that "the entire tort" was committed stateside. As a result, Plaintiffs cannot avail themselves of the non-commercial tort exception. *See Aharon v. Chinese Communist Party*, 2025 WL 1501938, at *12 (S.D. Fla. May 27, 2025) (holding non-commercial tort exception did not apply because "Defendants' alleged torts didn't take place *exclusively* within the United States") (emphasis in original).

But even if "the entire tort" had occurred within the United States, the PRC and CPC would still be immune under the discretionary function exception to the non-commercial tort exception set forth at 28 U.S.C. § 1605(a)(5)(A). Nothing in the Amended Complaint suggests that any of the actions taken by PRC and CPC officials—e.g., barring Chinese citizens from leaving or entering Wuhan but allowing foreign citizens to do so, or waiting until January 20, 2020 to make the first public announcement regarding the coronavirus—were "mandatory or

forbidden" under Chinese law. *Missouri ex rel. Bailey*, 90 F.4th at 936. To the contrary: all of these actions "involve[d] an element of judgment or choice" and were taken by foreign government officials in the face of an unprecedented public health crisis. *Berkovitz*, 486 U.S. at 536. The difficult task of responding to such a crisis is obviously "grounded in social, economic, and political policy" and seems to be precisely the type of scenario that Congress intended to immunize from "judicial 'second-guessing' . . . through the medium of an action in tort." *Id*. at 536-37 (internal citation omitted); *see also Aharon*, 2025 WL 1501938 at *12 ("A foreign government's handling of a virus—both within and outside its own borders—is obviously 'grounded in social, economic, [and/or] political policy.'") (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

Because the non-commercial tort exception does not apply, the FSIA immunizes the PRC and CPC from suit in the United States for the conduct alleged. The Court must therefore dismiss the complaint for lack of subject matter jurisdiction.

**AND NOW**, this 4th day of August, 2025, upon consideration of

the July 1, 2025 Status Report (ECF No. 32), it is **ORDERED** that the **STAY** on the above-captioned case is **LIFTED**.  It is **FURTHER ORDERED** that Plaintiffs' complaint is **DISMISSED** in its entirety for lack of subject matter jurisdiction.  The Clerk of Court is directed to mark this case **CLOSED**.

     _s/ANITA B. BRODY, J._____

     ANITA B. BRODY, J.